Case 4:21-cv-02744 Document 129 Filed on 03/28/24 in TXSD Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 28, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, § § § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:21-CV-2744 |
| § | |
| RYAN ZINKWEG, *et al.*, § § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute involving a homeowners policy ("the policy") issued to the parents of Defendant Ryan Zinkweg ("Zinkweg"). At issue is whether the policy's controlled substance exclusion applies to an underlying state-court lawsuit against Zinkweg ("the state court suit"). The carrier for the policy, Plaintiff Occidental Fire & Casualty Company of North Carolina ("Occidental"), has filed a motion for summary judgment seeking a ruling that it did not owe Zinkweg a defense in the state court suit before the pleading in that lawsuit was amended. Occidental's motion (Dkt. 50) is **GRANTED**.

    **I.**    **BACKGROUND**

Defendant Christoffer Cox ("Cox") was a promising young gymnast who was preparing to join the gymnastics team at the University of Oklahoma when he suffered a spinal cord injury while staying overnight at Zinkweg's home that rendered him a quadriplegic. (Dkt. 51 at pp. 4–5). The exact manner in which Cox injured his spinal cord remains in dispute.

Cox and his parents sued Zinkweg in Texas state court for negligence and gross negligence. (Dkt. 51 at p. 5). In his original pleading in the state court suit,[1] Cox alleged that he and Zinkweg ingested lysergic acid diethylamide ("LSD")—which Cox had never taken before—during "the early morning hours of July 14, 2019" and that, "at some point during the next couple of hours and while the room was dark, [Cox] fell 2 feet from Zinkweg's bed to the floor." (Dkt. 51 at p. 4). Cox further pled that Zinkweg "heard [him] fall, turned on the light in the bedroom, and found [him] lying on the floor with his chest to the ground unable to turn over or to get himself up." (Dkt. 51 at p. 4).

According to Cox's pleading, Zinkweg, "[i]nstead of calling 911 or seeking help from his parents[,] left [Cox] on the floor until approximately 7:30 a.m." (Dkt. 51 at p. 4). At approximately 7:30 a.m., Zinkweg called a friend named Sammy Azhar ("Azhar").[2] (Dkt. 51 at p. 4). Azhar snuck into Zinkweg's house and helped Zinkweg pick Cox up off of the floor "without head and neck support" and place Cox back on Zinkweg's bed. (Dkt. 51 at pp. 4–5). Azhar and Zinkweg did not seek any help and instead "took photographs and video footage of [Cox] lying in the bed, unable to move." (Dkt. 51 at p. 5).

Cox's pleading alleges that "[i]t was not until hours later that Zinkweg finally alerted his parents" to Cox's condition. (Dkt. 51 at p. 5). Zinkweg's father called Cox's parents, who came to Zinkweg's house and then called 911. (Dkt. 51 at p. 5). At

---

[1] Since Occidental is only seeking a ruling on its duty to defend with regard to Cox's original state-court pleading, the Court's discussion is limited to that pleading.
[2] Azhar was a defendant in the state court suit but is not a party to this case.

"approximately 11:45 a.m.[,]" paramedics arrived at the Zinkweg home, stabilized Cox's spine, and rushed Cox to a nearby hospital. (Dkt. 51 at p. 5).

In the state court suit, Cox alleged that Zinkweg was negligent and grossly negligent in failing to promptly seek medical intervention and medical help for Cox; in failing to keep Cox still; in failing to secure Cox's neck; and in picking Cox up off of the floor and moving him to the bed. (Dkt. 51 at p. 5). Occidental disputes coverage and, in this motion for summary judgment, contends that it is not obligated to pay a portion of Zinkweg's defense costs because the policy's controlled substance exclusion applies to the allegations in Cox's original state-court pleading. (Dkt. 50 at p. 14). The policy's controlled substance exclusion stipulates that the policy's personal liability coverage does not apply to:

> "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Dkt. 62-1 at pp. 41, 43.

Cox and his parents settled with Zinkweg in the state court suit. This Court recently held a jury trial on Occidental's duty to indemnify. The duty-to-indemnify issue is currently the subject of post-verdict motion practice but is not at issue in this motion.

## II. SUMMARY JUDGMENTS

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id*. at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is

material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). And Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly

before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### III. THE COVERAGE DISPUTE

The Court concludes that Occidental is entitled to summary judgment on the duty-to-defend issue, as Cox's allegations in the state court suit fall within the scope of the policy's controlled substance exclusion.

#### a. The duty to defend

Under Texas law, insurance policies are construed in accordance with the same rules as contracts generally. *Canutillo Independent School Dist. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996). A court's primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Federal Insurance Co. v. Northfield Insurance Co.*, 837 F.3d 548, 552 (5th Cir. 2016). In determining whether an insurer has a duty to defend an insured against a third-party complaint, Texas courts follow the "eight corners" rule. *Canutillo*, 99 F.3d at 701. The eight corners rule determines whether the insurer has a duty to defend by comparing the allegations in the third party's pleadings with the language of the insurance policy. *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.*[3] When applying the eight corners rule, "the court must focus on the factual allegations

---

[3] The Texas Supreme Court recently reaffirmed that, "in most cases, whether a duty to defend exists is determined under Texas's longstanding eight-corners rule." *Monroe Guaranty Insurance*

that show the origin of the damages rather than on the legal theories alleged." *Id*. (quotation marks omitted). In addition to the factual allegations, a court must consider "any reasonable inferences that flow from the facts alleged." *Liberty Mutual Insurance Co. v. Graham*, 473 F.3d 596, 601 (5th Cir. 2006).

The insured bears the initial burden of showing that the claim against it is potentially within the insurance policy's scope of coverage. *Federal Insurance*, 837 F.3d at 552. If the insurer relies on a coverage exclusion to deny that it has a duty to defend, then it bears the burden of proving the applicability of the exclusion. *Id*. at 552–53. Once the insurer proves that an exclusion applies, then the burden shifts back to the insured to show that the claim falls within an exception to the exclusion. *Federated Mutual Insurance Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). If there is doubt as to whether a third party's allegations against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *Federal Insurance*, 837 F.3d at 552.

---

*Co. v. BITCO General Insurance Corp.*, 640 S.W.3d 195, 204 (Tex. 2022). The Texas Supreme Court added, however, that:

> if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of coverage, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.
> *Id*.

In this case, the eight corners rule is sufficient to determine whether a duty to defend exists, and no party has presented extrinsic evidence as contemplated by *Monroe*.

### *i.     The controlled substance exclusion*

The policy's controlled substance exclusion bars liability coverage for "bodily injury . . . arising out of the use . . . by any person of . . . LSD[.]" (Dkt. 62-1 at p. 43). Under Texas law, "[w]hen an exclusion precludes coverage for injuries 'arising out of' described conduct, the exclusion is given a broad, general, and comprehensive interpretation. A claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Scottsdale Insurance Co. v. Texas Security Concepts and Investigation*, 173 F.3d 941, 943 (5th Cir. 1999); *see also Century Surety Co. v. Seidel*, 893 F.3d 328, 333 (5th Cir. 2018). In addition, the Fifth Circuit has reasoned that "arising out of" are "words of much broader significance than 'caused by'" and "are ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from[.]'" *EMCASCO Insurance Co. v. American International Specialty Lines Insurance Co.*, 438 F.3d 519, 524 (5th Cir. 2006); *see also Utica National Insurance Co. of Texas v. American Indemnity Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("This Court has held that "arise out of" means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation.") (citation omitted).

In the state court suit, Cox alleged that he ingested LSD with Zinkweg, fell off of Zinkweg's bed shortly thereafter, and was "unable to turn over or to get himself up" after he fell. (Dkt. 51 at p. 4). Cox further alleged that Zinkweg exacerbated Cox's injuries and "caused" Cox's quadriplegia through his failure to seek medical help for Cox, his failure to stabilize Cox's neck, and his lifting (with Azhar) of Cox from the floor to the bed. (Dkt. 51 at p. 5). In opposing Occidental's motion for summary judgment, Zinkweg contends

that the policy's controlled substance exclusion does not apply because "[t]he ingestion of LSD is not the basis for the negligence cause of action in [Cox's pleading], nor is it alleged to be the cause of the injuries that resulted in [Cox's] quadriplegia[.]" (Dkt. 53 at p. 11).

The Court disagrees with Zinkweg. First, there seems to be no reason for Cox to discuss his and Zinkweg's use of LSD in his pleading if it had nothing to do with his injuries. But put that aside. "Texas law requires [the Court] to consider the allegations in the complaint along with any reasonable inferences that flow from the facts alleged—that is, all the facts alleged in combination—when assessing the duty to defend." *Liberty Mutual Fire Insurance Co. v. Copart of Connecticut, Inc.*, 75 F.4th 522, 532 (5th Cir. 2023) (quotation marks omitted). A straightforward examination of the facts pled by Cox and the reasonable inferences flowing from those facts indicates that the ingestion of LSD by Cox and Zinkweg had, at a minimum, an incidental relationship to Cox's injuries.

LSD is, as Cox's own pleading points out, "a hallucinogenic drug" that can cause severe impairment. (Dkt. 51 at p. 4). Cox had never taken LSD before the night of his injury. Cox was evidently not an unusually clumsy person; he was about to join a college gymnastics team. The Court may reasonably—and indeed, must—infer that Cox's LSD-induced impairment had at least an incidental relationship to his fall from Zinkweg's bed and the resultant injuries. *Cf. Allstate Insurance Co. v. Hallman*, 159 S.W.3d 640, 644–45 (Tex. 2005) (reversing the court of appeals and concluding that a coverage exclusion applied based on an inference drawn from the pled facts) ("The court of appeals, noting that courts are limited to the language in the pleadings and the policy when determining an insurer's duty to defend, concluded that the lease failed to meet the profit motive

requirement. Admittedly, the pleadings do not contain any reference to Hallman's pecuniary interest in the lease, nor do they expound on her motive for leasing her property. However, we conclude that, in this circumstance, a profit motive can be inferred from the nature of the activity. One generally does not allow limestone mining with dynamite blasting to occur on his or her property without some expectation of remuneration or monetary gain.") (citation omitted). Moreover, Zinkweg's failure to obtain medical care for Cox for several hours, which Cox alleges worsened his initial injuries, has no explanation in the pleading aside from Zinkweg's own use of LSD.

The Court concludes that Occidental did not owe Zinkweg a defense in the state court suit before the pleading in that lawsuit was amended.

## IV.   **CONCLUSION**

Occidental's motion for summary judgment (Dkt. 50) is **GRANTED**. As previously mentioned, the ruling memorialized in this opinion only addresses Occidental's duty to defend and does not affect the parties' post-verdict motion practice on Occidental's duty to indemnify. The parties may still file post-verdict motions to be considered by the Court if they wish.

SIGNED at Houston, Texas, on March 28, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE